1 | Gregory J. Barnes (California State Bar No. 220480)
LAW OFFICE OF GREGORY J. BARNES
2 | 7165 Calabria Court, Suite D
San Diego, California 92122
3 | Telephone: 619.787.0302
Facsimile: 619.609.0534
4 |
Attorney for Plaintiffs United States for the Use and Benefit
5 | of Paradigm Mechanical Corp., and Paradigm Mechanical
Corp.
6 |
7 |
8 | UNITED STATES DISTRICT COURT
9 | EASTERN DISTRICT OF CALIFORNIA
10 | SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES FOR THE USE AND BENEFIT OF PARADIGM MECHANICAL CORP.; and PARADIGM MECHANICAL CORP., a California corporation,<br><br>                    Plaintiffs,<br><br>v.<br><br>BISHOP, INC., a California corporation; AEGIS SECURITY INSURANCE COMPANY, a Pennsylvania corporation duly authorized to do business in California; and DOES 1 through 5, inclusive,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. BREACH OF CONTRACT;<br>2. OPEN BOOK ACCOUNT;<br>3. ACCOUNT STATED;<br>4. GOODS SOLD AND DELIVERED;<br>5. REASONABLE VALUE;<br>6. UNJUST ENRICHMENT;<br>7. RECOVERY UNDER MILLER ACT PAYMENT BOND |

## JURISDICTION

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the provisions of the Miller Act, 40 U.S.C. § 3133(b)(3)(B). The Court has pendent jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

///

///

COMPLAINT

121007-05

**VENUE**

2.     The contract at issue was to be performed and executed in Tracy, California, within the boundaries of San Joaquin County, California. Venue therefore lies in the United States District Court for the Eastern District of California – Sacramento Division – pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2).

**PARTIES**

3.     Plaintiff Paradigm Mechanical Corp. ("Plaintiff" or "PMC") is, and at all times mentioned was, a California corporation organized and existing under and by virtue of the laws of the State of California, with its principal place of business in San Diego County, California.

4.     Plaintiff is, and at all times herein mentioned was, a supplier of labor, materials and supplies to the project described herein below, and was operating as a Class B General Building Contractor and Class C-20 Warm-Air Heating, Ventilating and Air-Conditioning Contractor, Contractors State License Board license # 947497.

5.     Plaintiff is informed, believes, and on that basis alleges, that Defendant Bishop, Inc. ("Bishop") is, and at all times mentioned herein was, a California corporation organized and existing under and by virtue of the laws of the State of California, with its principal offices located in Orange County, CA, and was operating as a Class B General Building Contractor, and Class C-39 Roofing Contractor, Contractors State License Board license # 793917.

6.     Plaintiff is informed, believes, and on that basis alleges, that Defendant AEGIS SECURITY INSURANCE COMPANY ("Aegis") is, and at all times mentioned herein was, a Pennsylvania corporation organized and existing under and by virtue of the laws of the State of Pennsylvania, and duly qualified and authorized to do business in the State of California, and authorized by the California Department of Insurance to issue surety bonds.

7.     The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants named and sued as DOES 1 through 5 inclusive, are unknown to Plaintiff.   Plaintiff is informed, believes, and alleges, that each of these fictitiously named Defendants is in some way liable to Plaintiff on the causes of action stated below.   Pursuant to the

2

121007-05

California Code of Civil Procedure, §474, Plaintiff will ask leave to amend this complaint when the true names of said fictitiously named Defendants is ascertained.

8.   Plaintiff is informed, believes, and alleges that at all times herein mentioned, each of the Defendants sued herein was the agent and employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and employment.

## STATEMENT OF FACTS

9.   On or around March 8, 2016 Defendant Bishop contracted with the U.S. Army Corps of Engineers ("Army Corps"), on the federal project known as the "DDJC Tracy Site Contract No W91238-16-C-0005 (the "Project"), which contract is hereinafter known as the "Prime Contract". The work of the Prime Contract was described therein.

10.   As required by law and in furtherance of the Prime Contract, Bishop obtained a Miller Act payment bond (hereinafter the "Bond") from, and issued by, Defendant Aegis in the principal amount of the Prime Contract ($438,194.56), as required by the Army Corps. In the Bond, Aegis agreed to be bound "jointly and severally" with Bishop to make payment to all persons having a direct contractual relationship with Bishop in the event that Bishop failed to make prompt payment to such persons. A true and correct copy of the Bond is attached hereto as "Exhibit A" and incorporated herein by this reference.

11.   On or about May 31, 2016, Plaintiff and Defendant Bishop entered into a written Subcontract Agreement ("Subcontract") pursuant to which Plaintiff agreed to furnish certain material, equipment, labor, supplies, and/or services to said Defendant Bishop for the Project and Defendant Bishop agreed to pay the Plaintiff for any such material, equipment, labor, supplies, and/or services furnished, including any Attorney Fees and costs for any collection enforcement. A true and correct copy of the Subcontract is attached hereto as "Exhibit B" and incorporated herein by this reference.

12.   The Plaintiff completed its work on or about December 23, 2016, all of which materials, equipment, labor, supplies and/or services were furnished in the prosecution of the work provided for in the Subcontract and the Prime Contract and specifications. On December 20, 2017 Bishop, Aegis and the Plaintiff entered into a Tolling Agreement whereby the parties

121007-05

agreed, relative to the Project, that "any periods of limitation applicable in the Contract (Prime Contract) or Bond, any state or federal statutes of limitations, and applicable defenses including but not limited to laches, waiver, or estoppel or which may be applicable to potential claims or which provide defenses against potential claims, are tolled through January 22, 2018". A true and correct copy of the Tolling Agreement is attached hereto as "Exhibit C" and incorporated herein by this reference.

13.    Bishop has failed to pay the Plaintiff the sum of $51,360.00, which represents the balance owed to the Plaintiff for material, equipment, labor, supplies, and/or services furnished to said Defendant Bishop for the Project.  A true and correct copy of the Collection Report of PMC, dated 1/18/18 showing the accounting of the Project and the balance owed to PMC by Bishop in the amount of $51,360.00 is attached hereto as "Exhibit D" and incorporated herein by this reference.

14.    The Plaintiff had submitted, on June 13, 2017, a notarized Proof of Claim for payment to Aegis under the Bond, but Aegis has failed to pay the Plaintiff the amount due.

**FIRST CLAIM**

(Breach of Contract)

15.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 14, as though set forth fully herein.

16.    Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Subcontract.

17.    Defendants Bishop and DOES 1 through 5, and each of them, breached their Subcontract with Plaintiff by, among other things, failing to pay Plaintiff the full amount due and owing under the Subcontract for the materials, labor, supplies, and/or services rendered by Plaintiff, despite Plaintiff's demand for said payment.

18.    As a direct and proximate result of the breach of the Subcontract by Defendants Bishop and DOES 1 through 5, and each of them, Plaintiff has suffered damages due to Defendants failure to remunerate contract funds for labor, materials, equipment, supplies, and/or services rendered in the construction for the Subcontract in an amount to be established at trial,

121007-05

1   but estimated at this time to be in excess of $51,360.00, in addition to attorney fees, and costs of

2   suit incurred herein.

3       19.    Plaintiff has been compelled to engage the Law Offices of Gregory J. Barnes to

4   prosecute the instant action.    Plaintiff is entitled to its attorney fees and costs incurred in

5   connection herewith.

6   **SECOND CLAIM**

7   (Open Book Account)

8       20.    Plaintiff hereby incorporates by reference each and every allegation contained in

9   paragraphs 1 through 19, as though set forth fully herein.

10      21.    Within the last two years, and within San Joaquin County, California, Defendants

11  Bishop and DOES 1 through 5, and each of them, became indebted to Plaintiff on an open book

12  account in an amount to be established at trial, but estimated at this time to be in excess of

13  $51,360.00 for the Project, for equipment, labor, supplies and/or services, provided to Defendants

14  Bishop and DOES 1 through 5, and each of them, by Plaintiff.

15      22.    No portion of the outstanding amount estimated in the preceding paragraph has

16  been paid, and there is now due, owing and unpaid to Plaintiff from said Defendants an amount to

17  be established at trial, but estimated at this time to be in excess of $51,360.00, in addition to

18  attorney fees, and costs of suit incurred herein.    The said amount has not been paid by Bishop

19  despite Plaintiff's demand therefor.

20      23.    Plaintiff alleges that this cause of action is based on an Open Book Account

21  entered into on or after January 1, 1987, as defined in California Civil Code, § 1717.5.  As such,

22  Plaintiff is entitled to its reasonable attorney fees.

23  **THIRD CLAIM**

24  (Account Stated)

25      24.    Plaintiff hereby incorporates by reference each and every allegation contained in

26  paragraphs 1 through 23, as though set forth fully herein.

27      25.    Within the last two years, at the special instance and request of Defendants Bishop

28  and DOES 1 through 5, and each of them, Plaintiff provided certain equipment, labor, supplies

121007-05

1   and/or services to said Defendants for use and incorporation into the Subcontract and the Project.

2   Thereafter, by written statement of account from Plaintiff to Bishop and DOES 1 through 5, and

3   each of them, an account was stated between Plaintiff and said Defendants for equipment, labor,

4   supplies and/or services in an amount to be established at trial, but estimated at this time to be in

5   excess of $51,360.00.

6       26.    To date, none of the $51,360.00 described above has been paid to Plaintiff, despite

7   Plaintiff's demand, and there is now due, owing and unpaid to Plaintiff an amount to be

8   established at trial, but estimated at this time to be approximately $51,360.00, in addition to

9   attorney fees, and costs of suit incurred herein.

10   **FOURTH CLAIM**

11   (Goods Sold and Delivered)

12       27.    Plaintiff hereby incorporates by reference each and every allegation contained in

13   paragraphs 1 through 26, as though set forth fully herein.

14       28.    Within the last two years in San Joaquin County, California Defendants Bishop

15   and DOES 1 through 5, and each of them, became indebted to Plaintiff for an amount to be

16   established at trial, but estimated at this time to be approximately $51,360.00 for goods sold and

17   delivered by Plaintiff to Defendants, and each of them. The agreed reasonable value of that

18   portion of the said goods for which Defendants have failed to pay is, and at all times was, the

19   principal sum believed to be in excess of $51,360.00 and said Defendants, and each of them,

20   agreed to pay said sum to Plaintiff.

21       29.    Defendants Bishop and DOES 1 through 5, and each of them, have not paid

22   Plaintiff any of the said sum, and there is now due and owing from said Defendants to Plaintiff an

23   amount to be established at trial, but estimated at this time to be in excess of $51,360.00, in

24   addition to attorney fees, and costs of suit incurred herein.

25   ///

26   ///

27   ///

28   ///

6

COMPLAINT

121007-05

## FIFTH CLAIM

### (Reasonable Value)

30.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 29, as though set forth fully herein.

31.     Within the last two years in San Joaquin County, California Plaintiff provided equipment, labor, supplies and/or services to Defendants Bishop and DOES 1 through 5, and each of them, at their special request, and for which they promised to pay Plaintiff the reasonable value therefore.

32.     At all times mentioned herein, the total and reasonable value of the above-mentioned materials, labor, supplies and/or services for which said Defendants have failed to pay was and is an amount to be established at trial, but estimated at this time to be in excess of $51,360.00.

33.     Plaintiff has not been compensated for the reasonable value of the above-mentioned materials, labor, supplies and/or services.  There is now due, owing and unpaid to Plaintiff by Defendants Bishop and DOES 1 through 5, a sum to be established at trial, but estimated at this time to be in excess of $51,360.00, in addition to attorney fees, and costs of suit incurred herein.

## SIXTH CLAIM

### (Unjust Enrichment)

34.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 33 of this Complaint as though set forth fully herein.

35.     Defendant Bishop, and DOES 1 through 5, received the benefit of the equipment, labor, supplies and/or services provided by the Plaintiff to the Project and the Subcontract.

36.     All of the equipment, labor, materials, supplies and/or services which are the subject of this action furnished by Plaintiff were actually used in, upon and about the construction and improvement of the above referenced Project and the Subcontract.

37.     Plaintiff is informed and believes, and based thereon alleges, that Bishop and DOES 1 through 5 received full payment from the Army Corp for the equipment, labor, materials,

121007-05

supplies and/or services which are the subject of this action furnished by Plaintiff which were actually used in, upon and about the construction and improvement of the above referenced Project and the Subcontract.

38.     Bishop and DOES 1 through 5 have failed to cause the Plaintiff to be paid in full for the equipment, labor, materials, supplies and/or services which are the subject of this action furnished by Plaintiff which were actually used in, upon and about the construction and improvement of the above referenced Project and Subcontract, and therefore have been unjustly enriched in an amount to be established at trial, but estimated at this time to be in excess of $51,360.00, in addition to attorney fees, and costs of suit incurred herein.

## SEVENTH CLAIM

(Recovery Under Miller Act Payment Bond)

39.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 38 of this Complaint as though set forth fully herein.

40.     As required by law and in furtherance of the Prime Contract, Bishop obtained a Miller Act payment bond (hereinafter the "Bond") from Defendant Aegis in the principal amount of the Prime Contract ($438,194.56), as required by the Army Corps. In the Bond, Aegis agreed to be bound "jointly and severally" with Bishop to make payment to all persons having a direct contractual relationship with Bishop in the event that Bishop failed to make prompt payment to such persons. A true and correct copy of the Bond is attached hereto as "Exhibit A" and incorporated herein by this reference.

41.     Plaintiff has not been paid in full for materials furnished or labor thereon of any kind with respect to the Project and the Subcontract. Aegis has been notified, in writing, of the amount remaining unpaid to the Plaintiff on the Project and the Subcontract.

42.     Pursuant to the provisions of the Bond, there is now due and owing to the Plaintiff from Aegis, the sum of $51,360.00 in addition to attorney fees pursuant to the Subcontract and costs of suit incurred herein.

43.     Aegis is obligated, pursuant to the Bond, to pay the Plaintiff for the labor, materials and services it furnished in the prosecution of the work provided for in the Prime

121007-05

Contract and the Subcontract, and for which Bishop and Does 1 through 5 inclusive failed to make payment.

44.     Aegis has failed to fulfill its obligation under the Bond to pay Plaintiff for labor, materials and services it furnished in the prosecution of the work provided for in the Prime Contract and the Subcontract, and for which Bishop and Does 1 through 5 inclusive failed to make payment.

45.     Plaintiff is entitled to payment from Aegis pursuant to the Miller Act, 40 U.S.C. § 3133.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1.     For the principal sum in an amount to be established at trial, but estimated at this time to be in excess of $51,360.00;

2.     Interest thereon at the maximum rate allowed by law;

3.     For reasonable attorney fees, pursuant to contract and/or statute;

4.     For prompt-payment penalties pursuant to statute;

5.     For costs of suit incurred herein; and

6.     For such other and further relief as the Court deems just and proper.

DATED: January 19, 2018                LAW OFFICE OF GREGORY J. BARNES

By: _____
Gregory J. Barnes
Attorney for Plaintiff  United States for the
Use and Benefit of Paradigm Mechanical
Corp. and Paradigm Mechanical Corp.

9

121007-05

# EXHIBIT "A"

Bond No.   B10 027 093

| PAYMENT BOND (See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) March 9, 2016 | OMB Number: 9000-0045 Expiration Date: 6/30/2016 |
|---|---|---|

PAPERWORK REDUCTION ACT STATEMENT: Public reporting burden for this collection of information is estimated to average 60 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspects of this collection of information, including suggestions for reducing this burden, to U.S. General Services Administration, Regulatory Secretariat (MVCB)/IC 9000-0045, Office of Governmentwide Acquisition Policy,1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | |
|---|---|---|
| Bishop, Inc. 1355 Bowman Rd 405 Auburn, CA 95603 | ☐ INDIVIDUAL  ☐ PARTNERSHIP ☐ JOINT VENTURE  ☒ CORPORATION | |
| | STATE OF INCORPORATION CA | |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND (Whole numbers only) | | | |
|---|---|---|---|---|
| Aegis Security Insurance Company P. O. Box 3153 Harrisburg, PA  17105 | MILLION(S) | THOUSAND(S) 438 | HUNDRED(S) 194 | CENTS 56 |
| | CONTRACT DATE March 8, 2016 | CONTRACT NO. W91238-16-C-0005 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| Bishop, Inc. | PRINCIPAL | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Michael Pinedo President | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | CORPORATE SURETY(IES) | | |
|---|---|---|---|
| SURETY A | NAME & ADDRESS | Aegis Security Insurance Company P. O. Box 3153 , Harrisburg, PA  17105 | STATE OF INC. PA  | LIABILITY LIMIT $ 5,340,000.00 |
| | SIGNATURE(S) | 1. | 2. |
| | NAME(S) & TITLE(S) (Typed) | 1. Richard V. Dobbs, Jr. Attorney-in-Fact | 2. Kimberly G. Rively, Witness |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 25A (REV. 5/2014)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

| CORPORATE SURETY(IES) (Continued) | | | | | |
|---|---|---|---|---|---|
| **SURETY B** NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY C** NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY D** NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY E** NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY F** NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY G** NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 U.S.C. Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)."

In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# AEGIS SECURITY INSURANCE COMPANY
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT AEGIS SECURITY INSURANCE COMPANY does hereby make, constitute and appoint: **Richard V. Dobbs, Jr.**

**Surety Bond Number:** B10 027 093
**Principal:** Bishop, Inc.
**Obligee:** USA, USACE Sacramento District

Its true and lawful Attorney-in-Fact, to make, execute and deliver on its behalf surety bonds, undertaking and other instruments of similar nature as follows: **$2.5 MILLION**

This Power of Attorney is granted and sealed under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 4th day of February 1993,

"Resolved, That the President, any Vice President, the Secretary and any Assistant Secretary appointed for that purpose by the officer in charge of surety operations shall each have authority to appoint individuals as Attorney-in-Fact or under other appropriate titles with authority to execute on behalf of the Company, fidelity and surety bonds and other documents of similar character issued by the Company in the course of its business. On any instrument making or evidencing such an appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the Company, the seal or facsimile thereof may by imposed or fixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

"Resolved, That the signature of each of the following officers; President, Vice President, any Assistant Vice President, any Secretary or Assistant Secretary and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any Certificate relating thereto, appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for the purpose only of executing and attesting bonds and undertaking and other writings upon the Company and any such power required and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or undertaking to which it is attached.

IN WITNESS WHEREOF, AEGIS SECURITY INSURANCE COMPANY has caused its official seal to be hereunto affixed, and these presents to be signed by its President this 19th day of July 2010.

AEGIS SECURITY INSURANCE COMPANY

BY:

**DARLEEN J. FRITZ**
President

Commonwealth of Pennsylvania }
                              } s.s.: Harrisburg
County of Dauphin             }

On this   19th day of July 2010   before me personally came Darleen J. Fritz to me known, who being by me duly sworn, did depose and say that she is President of AEGIS SECURITY INSURANCE COMPANY, the corporation described herein and which executed the above instrument; that she knows the seal of the said corporation, that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that she signed her name thereto by like order.

**REBECCA LIDDICK**
Notary Public
My Commission Expires July 25, 2017

I, the undersigned, Assistant Secretary of AEGIS SECURITY INSURANCE COMPANY, a Pennsylvania corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed at the City of Harrisburg, in the Commonwealth of Pennsylvania, dated this   9th   day of March, 2016

**DEBORAH A. GOOD**
Secretary

# EXHIBIT "B"



**BISHOP INC**

State Contractor's License No.: _947497_
Federal Tax ID No.: _27-1975577_

1429 W. Collins Ave. Orange, CA 92867
Phone: (714) 628-1208 Fax: (714) 628-1209
Contractor License: 793917

## SUBCONTRACTOR AGREEMENT

### Replace Existing Air Handling Units with New HVAC Units in Multiple Buildings Within the DDJC Tracy Site
### Job #G16013 – USACE Sacramento District

THIS AGREEMENT, entered into this 31st of May, 2016 in the County of Orange of the State of California, by and between BISHOP, INC., a California Corporation, hereinafter called the "Contractor", and PARADIGM MECHANICAL CORP. hereinafter called the Subcontractor". Contractor and Subcontractor may be individually referred to hereinafter as a "Party" and collectively as the "Parties."

NOW THEREFORE, the Parties herein, agree as follows:

1.   SCOPE OF WORK

Subcontractor shall provide the services per USACE Sacramento District Contract #W91238-16-C-0005 specifically described in **Exhibit A** to this Agreement, which is attached hereto and incorporated herein by this reference. Subcontractor, having thoroughly informed themselves of the conditions surrounding the proposed work and having thoroughly checked and examined job site, specifications and having all the necessary materials, tools and equipment for the proposed work, and all other things necessary to perform and complete the proposed work in a workmanlike manner and in strict accordance with the contract documents, agrees to complete that portion of the general contract described in Exhibit A attached hereto.

Subcontractor is wholly responsible for all payroll taxes, deductions, withholdings, contributions or similar matters required of employers, in relation to the persons working under the direction and supervision of Subcontractor. Subcontractor is an independent contractor and nothing contained herein shall be construed to make Subcontractor an agent or employee of General Contractor.

LIQUIDATED DAMAGES

If the subcontractor fails to complete the work within the time specified in the contract, the subcontractor shall pay liquidated damages to the prime contractor (Bishop, Inc.) in the amount of $1,877.00 for each calendar day of delay until the work is completed or accepted.  Subcontractor will not be liable for delays caused by other trades, government shutdown. *Written notice of Liquidated Damages must be provided ahead of time. ~ms~*
If the prime contractor (Bishop, Inc.) terminates the subcontractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the termination clause.

2.   CONTRACT PRICE

Contractor shall pay Subcontractor ***THREE HUNDRED FOUR THOUSAND, NINE HUNDRED EIGHTY-FOUR DOLLARS & 00/100 ($304,984.00)***, as the total subcontract price. Such payment shall be made pursuant to the progress payment provisions as set forth in Section 4. Subcontractor shall obtain and pay for all required permits and license fees.

1

Initial _____

Initial _____

Bankruptcy, involuntary Bankruptcy, or any Assignment for the benefit of creditor's, (8) breach of this agreement, or (9) Assignment of all or any part of this agreement. When the above are rectified, if possible, to the satisfaction of Contractor, such amounts as then due and owing may be paid or credited to Subcontractor.

5.   TERMINATION OF AGREEMENT

Contractor may immediately terminate this agreement upon the occurrence of any one or more of the following events:

a)   If Subcontractor commences a voluntary case under any Chapter of the Bankruptcy Code, as now or hereafter in effect, or if Subcontractor takes any equivalent or similar action by filing petition or otherwise under any other federal or state law in effect at such time relating to the bankruptcy or insolvency;

b)   If a Petition is filed against Subcontractor under any Chapter of the Bankruptcy Code as now or hereafter in effect at the time of filing, or if a Petition is filed seeking any such equivalent or similar relief against Subcontractor under any other federal or state law in effect at the time relating to bankruptcy or insolvency;

c)   If Subcontractor makes a general assignment for benefit of Creditors;

d)   If a trustee, receiver, custodian or agent of Subcontractor is applicable law or Under contract, whose appointment or authority to take charge of property of Subcontractor is for the purpose of enforcing a lien against such property or for the purpose of general administration of such property for the benefit of Subcontractor's creditors;

e)   If Subcontractor admits in writing an inability to pay its debts generally as they become due or fails to pay subcontractors or material suppliers;

f)   If Subcontractor persists in any failure to perform the Subcontractors work under this agreement, such failure to include, but is not limited to, failure to supply sufficient skilled workers or suitable materials or equipment or failure to expeditiously progress in completion of the work.

g)   If Subcontractor disregards or violates laws or regulations of any public body having jurisdiction, including, but not limited to site safety requirement;

h)   If Subcontractor otherwise violates, in any manner, the provisions of this agreement. In the case of a termination of this agreement, a) Subcontractor shall have seven (7) days to remove all Subcontractor equipment from the Property, and b) Subcontractor shall have the responsibility to leave the Property and work sites in a safe condition that will not cause damage or injury to property or persons,          including those visiting, utilizing and/or residing at the Property.

6.   INDEPENDENT CONTRACTOR

The Parties acknowledge and agree that Subcontractor shall be and is an independent Subcontractor and is not an employee of Contractor All workmen and laborers of Subcontractor performing any work under the terms of this Agreement shall be employees of the Subcontractor  and shall in no way be considered employees of Contractor any workmen on site at the direction of the Subcontractor that are not employees of the Subcontractor must be pre-approved in writing by Contractor.

7.   INDEMNIFICATION

Subcontractor shall indemnify and defend Contractor, and owners, directors, officers, agents, attorneys, and employees, and save them harmless from all injuries, claims, liens, suits, obligations, liabilities, losses, demands and expense, including attorney's fees (hereinafter "Claims") which in any way arise from, are asserted by, relate to, or result from, this agreement and/or the work performed, or failed to be performed under this agreement, and any fault, negligence, or wrongdoing of the Subcontractor, its agents, employees, Sub-Subcontractors, or any other persons acting under the direction or control of Subcontractor in the performance or failure of performance of the Subcontractors work, and the terms and conditions of this agreement. This indemnity provision applies regardless of

3

Initial _MWG_

Initial _MP_

any active or passive negligent act or omission of a party to be indemnified hereunder. This indemnity will not extend the claims arising out of the sole negligence or willful misconduct of Contractor. The obligations described in this paragraph are in     addition to, and shall not be construed to negate, or otherwise reduce any other obligation of indemnity which would otherwise exist as to any party or person to be indemnified hereunder or any other indemnity obligations provided for elsewhere in this agreement. The obligations described in this paragraph, as well as all other indemnity obligations provided for in this agreement, shall survive the termination of this agreement.

8.     INSURANCE

SUBCONTRACTOR shall maintain worker's compensation, general liability, and automobile in the minimum amounts required by Contractors contract with the Owner as set forth below, whichever limits and coverages are higher.    Such insurance shall indemnify and hold harmless the CONTRACTOR, OWNER, ENGINEER, ARCHITECT and other SUBCONTRACTOR'S from all accidents or occurrences arising out of the SUBCONTRACTOR'S operations with limits and in amounts at least equal to the greater of those specified in the General Contract, the insurance to be in form and issued by a company satisfactory to the Contractor and the OWNER: to furnish to the CONTRACTOR, when and as often as required, satisfactory evidence that they comply with this requirement.   Attached to each certificate of insurance shall be a copy of the Additional Insured Endorsement that is part of the SUBCONTRACTOR'S Commercial General Liability Policy. These certificates and the insurance policies shall contain a provision that coverage afforded under the policies will not be cancelled or allowed to expire unless 30 days prior written notice has been given to CONTRACTOR and the OWNER. CONTRACTOR shall ne named as an additional insured on a primary and non-contributory basis on all liability and excess policies.   Coverage for SUBCONTRACTOR'S and CONTRACTOR shall include completed operations coverage.   Minimum required insurance limits, coverage on an occurrence basis:

1)   Commercial General Liability (CGL) with limits of Insurance of  not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate.

   a)   If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.

   b)   CGL coverage shall be written on ISO Occurrence form CG 00 01 1093 or other form providing equivalent coverage and shall cover liability arising from premises, operations, independent CONTRACTORS, products-completed operations, and personal and advertising injury.

   c)   CONTRACTOR, the OWNER and any other parties required by CONTRACTOR'S contract with the OWNER, shall be included as additional insureds on the CGL, using ISO Additional Insured Endorsement CG 2010 (11/85) or an endorsement providing equivalent coverage to the additional insureds. The coverage for the additional insureds shall be as broad as the coverage provided for the Sub.  It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to the additional insured.

   SUBCONTRACTOR shall maintain CGL coverage for itself and all additional insureds for the duration of the project and, if commercially practicable, for at least 6 years after substantial completion of the Project.

2)   Automobile Liability:

   a)   Business Auto Liability with limits of at least $1,000,000 each accident

   b)   Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.

   c)   CONTRACTOR, OWNER, and any other parties required by CONTRACTOR'S contract with the OWNER, shall be included as additional insureds on the auto policy.

4

Initial _____

Initial _____

3) Workers Compensation and Employers Liability:

    a)  Employers Liability Insurance limits of at least $1,000,000 per accident for bodily injury by accident and $1,000,000 per employee for injury by disease.

    b)  Where applicable, U.S. Longshore and Harborworkers Compensation Act Endorsement shall be attached to the policy.

    c)  Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.

## STANDARD OF PERFORMANCE AND INSPECTION

Subcontractor shall use due care, skill and diligence in the performance of its obligations under this Agreement. All work and services to be provided under this Agreement shall be done in a first  class workmanlike manner according to or exceeding industry standards and in conformance with  the terms of this agreement.  Subcontractor hereby warrants and represents that it and any and all of its employees or Subcontractors or other persons or firms under control of Subcontractor  performing services or work under this Agreement shall be properly licensed and shall comply  with any and all applicable federal, state and local laws and regulations. Subcontractor further      warrants and represents that it shall comply with the requirements of the Occupational Safety and Health  Act  of  1970,  29 U.S.C. Section 651 et. Seq. and analogous legislation in California (the           "Act"), to the extent the Act applies to Subcontractor's performance of its obligations hereunder. (SB198) Subcontractor shall file evidence of compliance with the Contractor. Subcontractor further warrants and represents that all work performed and materials provided will be of the specified quality, suited for the intended purpose and free of defects after substantial completion of the project.  Subcontractor shall promptly correct any defect in materials and/or workmanship at no    expense            to Contractor. Subcontractor shall assign and deliver to Contractor all guarantees and warranties of equipment manufacturers and material suppliers that apply to any portion of the work performed by Subcontractor. If requested, Subcontractor agrees to furnish certified verification of the grade or quality of materials Subcontractor is using or used in the work. Such verifications shall be made at Subcontractors sole cost and expense. Should any dispute arise as to the quality of Subcontractor's work or materials, the good faith determination of Contractor shall be binding upon Subcontractor. The warranties in this section shall be in addition to, and not a limitation       upon   any    other warranties provided by Subcontractor, any other warranty, guaranty or remedy provided by law, or the other warranties provided for in Exhibit A or elsewhere in this agreement.

4)    ## RESTORATION OF PROPERTY

In the event that the Subcontractor, its employees or subcontractors cause damage during the course of work performed under the terms of this Agreement to the job site or to other work on the site, the Subcontractor shall promptly remedy such damage and repair such damaged property to a  condition substantially similar to that which existed before the damage was caused or resulted. In        the event the Subcontractor fails to do so in a ten day timeframe of written notice, Contractor may proceed to repair the damage and hold Subcontractor responsible for the amount of such repair, and may withhold an amount equal to the cost of repair or restoration from any payments due under the terms of this Agreement.

5)    ## WARRANTY

Contractor warrants to Owner that all materials and equipment furnished shall be new unless otherwise specified, and that all Work and materials furnished under this Agreement shall be of good quality, free from faults and defects and in conformance with the Contract Documents. Contractor shall promptly make good any and all defects that appear within a period of one (1) year from final completion within thirty (30) days of receipt of written notice thereof; provided that this special warranty shall not prejudice any other rights the Owner may have relative to defective Work under this Agreement or applicable laws. Contractor certifies that it has reviewed, observed and accepted as suitable for its Work the existing conditions at the Project site.

6)    ## MISCELLANEOUS

    1)  ## ASSIGNABILITY OF AGREEMENT

Initial _*nnA*_

Initial _*MP*_

Contractor and the Subcontractor each binds itself, its successors, assigns and legal representatives to such other Party with respect to all covenants, agreements, and obligations contained in this Agreement. Neither Party shall assign this Agreement without the prior written consent of the other Party.

2) **WAIVER AND BREACH**

   a) A waiver by Contractor of any breach of any term or condition hereof shall not be deemed a waiver of any other or, any subsequent breach.

   b) In the event either Party to this Agreement is required to file a legal action or arbitration or mediation proceeding due to a breach hereof, the costs of said action or proceeding including, but not limited to, reasonable attorneys' and experts' fees, shall be paid to the prevailing party.

3) **LIEN PROTECTION**

   Subcontractor shall indemnify, defend and hold Contractor its officers, directors, employees and   agent's harmless from and against:

   a) any and all stop notices, pertaining to M.A. vendors/suppliers

   b) any and all mechanics' liens, and

   c) any actions, claims or proceedings filed or instituted against Contractor by any person or entity in connection with any stop notice, mechanics' lien, or action asserted with respect to the Work.

   Contractor shall further be entitled to recover from Subcontractor all costs, expenses and damages, including reasonable attorneys' and experts' fees, incurred by Contractor in litigating any stop notices, mechanics' liens or above-referenced actions, claims or proceedings.

   Subcontractor shall keep Contractor, the Work, the property and any fund from which compensation is to be paid free and clear of all liens, claims, or stop notices arising from the performance or nonperformance of the Work. If a lien, claim or stop notice is asserted, Contractor may, at its sole discretion and without limiting or waiving any other rights or remedies it or other interested parties may have. (i) pay the amount of the lien, stop notice or claim either directly to the claimant or by issuance of, joint payment to Subcontractor and claimant, and/or (ii) retain from any payments when due an amount sufficient to discharge the claimed amount and to protect Contractor from any cost, expense, loss or damaged suffered, including reasonable attorneys' fees, in connection therewith.

   Contractor shall further be entitled to withhold payment from Subcontractor to protect Contractor from loss resulting from: (1) claims or liens filed, (2) reasonable evidence indicating likely filing of claims or liens, (3) Subcontractor's failure to pay subcontractors and/or material suppliers, or (4) other such evidence   that  the Work cannot be completed for the unpaid balance.

4) **CALIFORNIA LAW, VENUE**

   This Agreement shall be interpreted and enforced in accordance with the laws of the State of California. The Parties hereby expressly agree that if legal action or proceeding is required to interpret or enforce this Agreement, said action shall be filed in Orange County, California and the prevailing or successful party shall be entitled to reasonable attorneys' fees and costs.

6

Initial _____

Initial _____

IN WITNESS WHEREOF, this Agreement has been duly executed by the above named parties, on the day and year first above written.

BISHOP, INC.

By: _____

Print Name: __Michael Pinedo, President__
Date: _____1-27-17_____

Subcontractor: PARADIGM MECHANICAL CORP.

By: __Melinda Dicharry_____

Print Name: __Melinda Dicharry_____

Date: _____1-27-17_____

8

Initial _____
Initial _____

# Exhibit A
## STATEMENT OF WORK

Provide all supplies, materials, supervision and equipment necessary for the following:

* Safe off, isolate and remove each air conditioner.
* Modify equipment pads and/or frames as needed, rig new units into place
* Modify supply and return air ducting as needed and connect to new units
* Provide new smoke detectors in supply air duct where air flow exceeds 2000 cfm
* Provide horizontal economizers
* Modify, as required, condensate piping and supports
* Provide new seal tight, conduit and wire where needed
* Startup and test each unit
* Remove trash and debris from site daily
* Abide by OSHA and EM385-1-1 Safety Standards
* Ensure that all on-site employees wear OSHA approved personal protective equipment
* Provide submittals for government approval

All of the above to be done for the following units, per Building

| Building # | Units to Be Replaced |
|:---:|:---|
| 13 | Remove & Replace (2) 7.5 ton units & (1) 4 ton unit |
| 14 | Remove & Replace (1) 7.5 ton unit & (3) 5 ton units |
| 15 | Remove & Replace (3) 7.5 ton units |
| 18 | Remove & Replace (1) 7.5 ton unit & (1) 10 ton unit |
| 19 | Remove & Replace (4) 6 ton units |
| 20 | Remove & Replace (2) 3 ton units & (2) 2 ton units |
| 21 | Remove & Replace (1) 5 ton unit |
| | |

9

Initial _mrd_

Initial _NP_

# EXHIBIT "C"

# TOLLING AGREEMENT

## DEFINITIONS

For the purposes of this Tolling Agreement ("**AGREEMENT**") the following terms shall have the following meanings:

      A.    "**AEGIS**" shall refer to Aegis Security Insurance Company, and its heirs, executors, corporations, partnerships, subsidiaries, joint ventures, businesses, however structured, partners, members, trustees, administrators, insurers, successors, assigns, attorneys and other representatives.

      B.    "**BISHOP**" shall refer to Bishop, Inc., its executors, corporations, partnerships, business, however structured, partners, members, administrators, insurers, successors and assigns.

      C.    "**PARADIGM**" shall refer to Paradigm Mechanical Corporation, Inc., its executors, corporations, partnerships, business, however structured, partners, members, administrators, insurers, successors and assigns.

      D.    "**PARTIES**" shall refer to the parties to this Agreement, including Aegis, Bishop and Paradigm.

      E.    "**CONTRACT**" shall refer to DDJC Tracy Site Contract No. W91238-16-C-0005.

## RECITALS

      A.    AEGIS issued Bond Number B10 027 093 (the "**BOND**") for the **DDJC Tracy Site Contract No. W91238-16-C-0005.** (the "**PROJECT**")

      B.    The PARTIES have concluded that it is desirable and in the PARTIES' best interest to settle potential issues related to claims against the BOND, AEGIS, BISHOP or PARADIGM concerning the PROJECT.

      C.    In the interest of continuing efforts and to avoid the time and expense of litigation, AEGIS, BISHOP and PARADIGM have agreed, relative to the PROJECT, to suspend and toll the running of any periods of limitations applicable to the PARTIES' potential claims and defenses under the Contract, BOND, or at law arising from alleged damages or losses arising from the PROJECT or by virtue of Aegis having issued the BOND.

**NOW THEREFORE**, the PARTIES hereto, intending to be legally bound hereby, in consideration of mutual covenants and conditions set forth herein, receipt and sufficiency of which consideration is hereby acknowledged, it is agreed by and between the PARTIES, as follows:

1.      Recitals. The recitals contained herein are true and correct, and are incorporated herein by reference.

2.      EFFECTIVE DATE. The PARTIES agree that the EFFECTIVE DATE of this AGREEMENT shall be December 22, 2017. (the "**EFFECTIVE DATE**").

3.      Suspension of Applicable Periods of Limitations. The PARTIES agree, for themselves and on behalf of their insurers, affiliates, parents, subsidiaries, agents and other related companies; that any periods of limitation in the Contract or BOND, any state or federal statutes of limitations, and applicable defenses including but not limited to laches, waiver, or estoppel or which may be applicable to potential claims or which provide defenses against potential claims, are tolled through January 22, 2018.

4.      No Waiver of Claims or Defenses. The PARTIES agree that entering into this AGREEMENT does not waive any claims or defenses the PARTIES may have had before or as of the EFFECTIVE DATE of this AGREEMENT. The suspension and tolling period of this AGREEMENT shall be excluded from the calculation of the applicable period for asserting any claim or defense arising under the Contract, BOND or at law, and from any defense to any potential claim, including but not limited to any statute of limitation defense.

5.      Admissibility. This AGREEMENT shall not be admissible as evidence against any party for any purpose other than period of limitations issues or related defenses.

6.      Reservation of Rights. The PARTIES expressly enter into this AGREEMENT under a complete reservation of rights. Nothing herein shall be construed as a waiver, release, estoppel or modification as to any rights or defenses available to them under contract, statute or common law, except from the EFFECTIVE DATE in the event of claims against AEGIS, BISHOP, PARADIGM or the BOND concerning the PROJECT by entities that are not a party to this AGREEMENT and only in the event of such claims and as otherwise set forth herein.

7.      Governing Law. This AGREEMENT shall be construed and interpreted in accordance with the laws of the State of California.

8.      No Admission of Liability. The PARTIES agree that the execution of the AGREEMENT and the performance of any acts contemplated herein do not constitute an admission of liability, wrongdoing or fault by either party.

9.      Representation by Counsel. Each of the PARTIES represents that it has read and understands the provisions of this AGREEMENT, and has had the opportunity to receive advice from independent counsel of its own choosing. For the purpose of resolving any disputes arising out of this AGREEMENT, the AGREEMENT shall be deemed to have been drafted by each of the PARTIES, neither of whom may assert that it should be construed against the other.

10. _Authorization to Execute._ The persons executing this AGREEMENT on behalf of the respective PARTIES represent and warrant that they are authorized to execute this AGREEMENT and bind their respective party.

11. _Intended Beneficiaries._ This AGREEMENT is intended for the sole benefit of the PARTIES named herein and shall not inure to the benefit of any persons or entities not specifically named herein.

12. _Notices._ All notices required or permitted by this AGREEMENT shall be in writing and shall be delivered to the PARTIES or their respective counsel, at the addresses listed herein via: (a) hand delivery, or by (b) Certified United States Mail, Return Receipt Requested, or by (c) overnight courier, with proof of delivery, or by (d) Electronic Mail with proof of delivery.

To Aegis Security Insurance Company:

Sue Karlan
Aegis Authorized Representative
On Point Risk Solutions, Inc.
15025 Innovation Drive
San Diego, CA 92128
skarlan@onpointrisk.com


To Bishop, Inc.:

Holly Pinedo
1429 West Collins Avenue
Orange, CA 92867
holly@bishopinc.net


To Paradigm Mechanical Corporation

Gregory J. Barnes
Law Office of Gregory J. Barnes
7165 Calabria Court, Suite D
San Diego, CA 92122
gjbarnes@earthlink.net


13. _Execution in Counterparts._ This AGREEMENT may be signed in counterparts, of which together constitutes one AGREEMENT. Facsimile signatures shall be permitted and binding.

**IN WITNESS WHEREFORE,** the PARTIES having set forth their duly authorized signatures.

DATED: 12/20/2017       AEGIS SECURITY INSURANCE COMPANY

By: _____
     Sue Karlan, Authorized Representative

DATED: 12/20/17       BISHOP, INC.

By: _____
     Michael Pinedo,  President

PARADIGM MECHANICAL CORPORATION

DATED: 12-19-17       By: _____
               Melinda Dicharry, President

# EXHIBIT "D"

Collection Report
Paradigm Mechanical Corp.
1/18/2018

Page 1
1/18/18 13:14
LO 12.0.17.1228

Case 2:18-cv-00128-MCE-AC   Document 1   Filed 01/19/18   Page 28 of 28

| | | Contract Amount | Billed to Date | Unbilled Retention | Unbilled Contract |
|---|---|---|---|---|---|
| Job Number & Name | | | | | |
| J16076 Tracy DLA Unit Replacement | | 304,984.00 | 304,984.00 | 0.00 | 0.00 |

Customer: Bishop Inc.
Phone: (714) 628-1208
Fax: (714) 628-1209

Current Invoices

| Number | Date | Amount | Age | Open | Description | Type | Date | Amount | Description | Invoice Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 3371 | 11/29/16 | 208,609.06 | 415 | 380 | App 1:Tracy DLA Unit Rep | Payment | 1/30/17 | -49,301.47 | Check 4841 | 159,307.59 |
| | | | | | | Payment | 1/31/17 | -105,395.16 | Check 4847 | 53,912.43 |
| | | | | | | Payment | 2/13/17 | -960.47 | Check 4881 | 52,951.96 |
| 3386 | 12/31/16 | 65,876.54 | 383 | 383 | App 2:Tracy DLA Unit Rep | | | | | 118,828.50 |
| | | | | | | Payment | 2/13/17 | -70,680.74 | Check 4828 | 48,147.76 |
| | | | | | | Payment | 2/1/17 | -17,649.36 | Check 5569 | 30,498.40 |
| 3392 | 1/13/17 | 30,498.40 | 370 | 370 | App 3:Tracy DLA Unit Rep | | | | | 60,996.80 |
| 2957/2975 | 11/1/17 | (2,830.00) | | | Virginia Mechanical Invoices | | | | | 58,166.80 |
| | | | | | | Payment | 12/14/17 | -6,806.80 | Check 5569 | 51,360.00 |
| | | 302,154.00 | | | | | | -250,794.00 | | 51,360.00 |